Good morning, Your Honors. May it please the Court. Rudy Verner on behalf of the appellants, the Pinoleville Pomo Nation, and the individual elected officials and employees of the tribe who have been sued in this action. I'd like to try to reserve some time for rebuttal. Your Honor, the question that must be answered in this case is whether the tribe or the individual defendants are the real parties in interest on the fraud and RICO claims alleged in the appellee J.W. Gaming's complaint. We submit that the tribe is the real party in interest under the test articulated in Lewis v. Clark, and therefore that the claims against the individual defendants are barred by the tribe's sovereign immunity. We'll ask this Court to reverse the District Court's order on the motion to dismiss and dismiss the individual defendants from this action. Now I want to get right to the heart of the matter of this case, and that is in applying the real party in interest test, whether courts should simply look at which party will be bound by an adverse judgment, as the District Court did here and as J.W. Gaming contends is correct, or whether courts must examine other aspects of the suit, including the other allegations and claims in the complaint and the capacity in which the defendants were alleged to have been acting in order to determine which party is the real party in interest. Fortunately, Your Honors, the Supreme Court has given us clear guidance on this issue. In Ex parte Ayers, Ex parte New York, which is cited by Lewis v. Clark, and Ford Motor Company, the Supreme Court held that courts applying the real party in interest test must determine the essential nature and effect of the proceeding based on the record as a whole. Well, isn't this a specific claim against individuals for monetary damages? It is. The fraud and the RICO claims are alleged against the individual defendants only, and it's done, they do that, the plaintiffs do that because they were unable to sue the tribe due to sovereign immunity. So is it our contention that this is... Aren't you conceding your point at that stage? No, we're not. They're unable to sue the tribe due to the tribe's sovereign immunity. So this is a circumvention of an attempt to circumvent the tribe's sovereign immunity by suing here the entire tribe council. Or an attempt to invoke sovereign immunity by individuals whose conduct is at stake here. That's correct. It's alleged that these individuals have committed fraud and racketeering. However, if you look at the overall nature of the complaint, the basis of this suit is a breach of contract. This, the relationship between the parties, between JW Gaming and the tribe, is a business relationship. The tribe entered into a note with JW Gaming and was unable to repay the note by its maturity date, and JW Gaming sued for breach of contract. Well, then why doesn't Lewis v. Clark control this case? An employee acting within the scope of his employment at the time of the tort is not sufficient to bar a suit against the employee on the basis of tribal sovereign immunity. Well, two reasons. First, is this case is... Our case is simply different from the facts of Lewis v. Clark. Lewis v. Clark was a car accident case. Plaintiffs alleged they suffered personal injuries due to the personal conduct, tortious conduct, of a tribal employee. Here, as I've already said, this case arises out of a business relationship. And in addition to suing the tribe for breach of contract, there was a waiver given by the tribe in the note for that suit. The plaintiff has sued the entire, the entire tribal council for fraud. Even, even council members who were not on the council at the time that the note was negotiated and all of these alleged fraudulent acts occurred. That is, is evidence that the sovereign is the real party in interest. You sue the office, the tribal council, not specific individuals as the plaintiffs in Lewis v. Clark did. And this case is also distinguishable from Maxwell and Pistore v. Garcia, which plaintiffs rely on. Like Lewis, those cases too are tort actions, tort actions alone. There's no underlying breach of contract no underlying contractual relationship that forms a basis. What difference does that make? Is there any way that the tribe could be liable for the monetary judgment if one were rendered against the individual defendants in this case? If the tribe could be held liable? No. We concede that the judgment, if there's an adverse judgment on the fraud claims against the individual defendants, that that judgment runs against the individual defendants. However... Well, with that concession, then how can the individual defendants invoke the tribal sovereign immunity? Because that's not the whole test. That is not the entire inquiry that the Supreme Court has directed courts to make. And again, in decisions prior to Lewis v. Clark, for example, Ex parte New York, which Lewis cites, the court clearly stated that courts applying the real party and interest test have to look at the record as a whole. For example, the plaintiff requests equitable relief in their complaint. They request the appointment of a receiver over all business and affairs of the tribe. Under this court's holding in Maxwell, where the court said in suits against tribal officials, the courts have to be sensitive to whether the judgment, the relief sought, would interfere with the public administration of the sovereign or restrain the sovereign from acting or force it to act. What effect does that waiver that was made when the contract was signed on this whole thing? Can you not collect what the damages are on the direct suit against the tribe? No, they can. The plaintiff can collect, assuming that they prove that it was a valid waiver and prove liability under the contract and prove that they can recover against the tribe in accordance with the note. Yes, they can be made whole on the contract claim. But you're just claiming additional damages based on the fraud in RICO or whatever else is added to it. Yes, we are. There is no basis for those claims. In fact, this is not the time to argue the facts. However, if you look at the allegations in the complaint, which is all that the court has before it, the allegations of fraud are extraordinarily speculative. The plaintiff's entire theory of fraud rests on an allegation that of the $5.38 million that it invested, $324,000 was missing from a 2011 accounting. And from that fact or allegation, it then makes the conclusion that that money, sometimes it says $324,000, sometimes it says the whole amount that the plaintiff invested, was directed to personal uses, unspecified personal uses of the tribe. None of those assertions or claims relate to the contract, do they? Because these are all fraud claims. Well, they are fraud claims. However, as Lewis says, the critical inquiry in suits against tribal officials is whether those officials were acting in an official capacity when the alleged tortious conduct occurred. And here, it is plain based on the allegations. PSTOR takes care of that. Even if you're sued in official capacity, there's no immunity if the individuals are responsible for the monetary damages. Well, PSTOR holds that officials acting in an official capacity, that a claim, a riot, that tortious conduct made during the time that they are serving in an official capacity could potentially lead to individual liability. However, if the allegations in the complaint show that the officials were acting in a representative capacity, then they may assert sovereign immunity and that is precisely what this complaint does. The complaint overall shows conduct, the conduct that they allege underlies the fraud and the tribal officials governing the tribe at every step of the way in their fraud allegations. They allege that the officials negotiated a contract with JW Gaming, that they created through passing tribal resolutions, the Pinoleville Business Board, that they opened bank accounts, that they appointed a third party as their contact for casino development purposes. That is the precise things, the precise activities that any members of government do when they are operating the government. And so if the plaintiff were allowed to get into the council room simply by alleging there was fraud in relation to less than 5% of a total investment by a third party, then that the government would grind to a halt, whether it's a tribal government or the state or the federal government. It is a dangerous rule that would be adopted if this court were to affirm the district court's ruling on tribal sovereign immunity here. The officials in this case were acting within the scope of their authority at all times relevant to the negotiation of the contract and the disbursement of the loan proceeds. Is the claim by the plaintiffs there, does it involve oral statements by your clients or written statements or signing the negotiated contract or something else like that? Your Honor, it is unclear from the complaint the specific conduct that they rely, that they're relying upon to prove fraud. As I said earlier, they allege that there was, that the tribal officials directed funds to unspecified personal uses. They don't say, they don't directly say how much funds were directed, when they were directed to personal bank accounts, what use that money was put to. They're extraordinarily speculative and in fact don't pass Twombly's plausibility test in our view. I want to get back to this court's statement in Maxwell, that court, in suits against tribal officials, courts must be sensitive to whether the judgment would interfere with public administration of the government, the sovereign, or restrain the sovereign from acting. In the petition for mandamus that we filed in this case, which has been combined with this interlocutory appeal, it's not being argued before the court today, however, the court can... It's been submitted, but we obviously have it in front of us. It's been submitted. The court can take judicial notice of the arguments made in the petition in the response to the petition. In the response to the petition for mandamus, the plaintiff has stated that it is going to seek the remedy of reformation of contract against the tribe. It wants to reform the contract in order to make the loan a general recourse obligation of the tribe. That remedy will run, without question, against the tribe. The tribe would be bound by a reformed contract. And so, when you're applying the test, the real party and interest test, and the question is, against which party the remedy would be applied, it is clear, because they're seeking reformation of the contract that the tribe is a party to, that the remedy would be imposed against the tribe. I see I have two minutes left. I know you wanted to save a little time. Thank you. Good morning, Your Honors. May it please the Court, Gregory Narvez for the appellee. Your Honors, the panel should decline the individual appellant's invitation to contort the doctrine of tribal sovereign immunity to shield individual appellants from claims to redress acts of fraud and money laundering. The fraud and RICO claims in this case, as counsel, I believe, has conceded now, seek only money damages, only from the individual appellants, and a resulting adverse judgment would run only to those individual appellants. As a result, only the individual appellants are the real parties and interest to that claim, not the tribe. And therefore, the tribe isn't the real party and interest to those claims, and its immunity is not implicated. Couldn't the tribe reimburse or indemnify if you prevail here? Could? Yes, I believe the tribe could. And that precise issue was raised in Lewis and was raised in Maxwell, I believe. And the tribes there offered that as a reason to construe the tribe as the real party and interest. And the Supreme Court squarely rejected it as a purely intramural agreement. And its voluntary act to provide that indemnification can't extend sovereign immunity where it otherwise doesn't extend. And so as we've elucidated through this argument so far, the result in this case is compelled by Lewis, and this Court's consistent decisions in Pastore and Maxwell. And those cases are resoundingly clear. The real party and interest test turns on the entity that will be bound by the judgment, not the entity that's going to voluntarily pay for the judgment or voluntarily fund the defense or any other consideration. And so in this case, where only money damages are sought against the individual appellants, the answer's simple. The individual appellants are the real party and interest. Now, the appellants will point to a number of different considerations as justification that, you know, in fact the tribe is the real party and interest of this case. None of them are relevant to the analysis. First, they would point to the complaint's request for the appointment of a receiver. Well, if you examine the complaint, the receiver is requested against the tribal organizational defendants along with money damages and a declaration that the contract is full recourse. Not the tribe itself. Well, yes, the tribe is defined as a tribal organizational defendant. But the point I'm making here is that each of those defendants, as the district court noted, waived their contract. They are the real parties and interest to the contract claim. We seek money damages against them under the contract claim. And as Judge Orrick noted in his order that's on appeal here, the merits of whether a receiver is justified is dealt with much later in the litigation. It's irrelevant to the real party and interest test at issue now. You have a separate claim of breach of contract against the tribe by itself? That is correct. And counsel alludes to this notion that there's some remedy based on the contract, and that somehow makes this case about a contract claim. However, the money, the $5.5 million was fraudulently induced years before the subject contract was negotiated. The initial sham promissory note was presented. The money was put in. It was spent. A sham accounting was provided to my client. And then a notice of default came from the tribe saying that my client was putting the project in jeopardy by not providing sufficient funding. And in that context, over the ensuing year or so is when the subject note was negotiated. Now I also want to point out that in the partial answer in the district court, the individual appellants have raised 14 affirmative defenses to the contract. And I believe they've noted in their briefing before this court that hey, we're still holding the plaintiff to their burden of proving that there's a valid waiver under that contract. And so it's, the remedy under the contract is speculative still. It's irrelevant to the real party and interest analysis, but it certainly shouldn't persuade the court or have any impact on its analysis here because that remedy is speculative. And one of the core issues that we're going to be litigating over the contract is there's a couple of competing provisions in it. And one of those provisions provides that our only recourse is against, well, a money judgment for breach of the note can only be collected against revenues of a casino. Well, there is no casino. And we've outlined in our complaint all of the ways that our money wasn't spent on a casino. The other $5.5 million that was purportedly invested we now know wasn't invested. And we know that, and we allege in the complaint that all of this debt was marketed to potential financiers as senior debt on the project. And we have an email in the complaint quoting, hey, none of these people want to get involved because of all this debt on the project. All that to say, the contract, this isn't a, these claims are not contract claims. They are distinct. They seek different damages against different entities. And at the end of the day, we'll see how it shakes out. And as we've cited in our briefs, we'll be bound by the rule against double recovery, assuming we do collect on the contract claim and the tort claims. The next point I want to address is counsel's discussion about the capacity in which these actions were taken. The most important point here today is, PASTOR addresses that issue head on. It says those, the capacity in which the individuals were acting is, quote, wholly irrelevant to the sovereign immunity analysis. And it goes a step further and it says, indeed, many individual capacity claims are going to be brought against officials acting under color of law. And so it has no, absolutely no bearing on the question before this court of who the real party in interest is to the fraud and the RICO claims. And I also want to point out that, you know, counsel makes the argument that, well, that, you know, individual capacity claims are somehow going to hamper individual officials from exercising their government functions. Well, that argument, too, was raised and rejected by the Supreme Court. In Hafer versus Mello, the Supreme Court says, to be sure, the specter of money damages against individual tribal or government officials may hamper their exercise of their public duties. But we have a context in which we can address that, and that is the personal immunity context. And so the representative capacity arguments here and the nature of the acts, they, that is the context that this panel can consider those and consider the sort of personal immunity should apply, such as, you know, qualified or legislative or the like. But like, like in Lewis, the issue of personal immunity was not before the Supreme Court there, and it's not before this panel here. And it, it's, on that point, it's also worth noting the implausibility that the acts here were within the scope of authority of any office. There's, in, in Maxwell, it, it explains the Evans v. McKay decision by the Ninth Circuit in 1989, and there's a footnote there. It says, suits over plainly unlawful acts are individual capacity suits by definition. And so I would submit that what we have here and what we've alleged here are plainly unlawful acts as the, as the district, well, the district court found we plausibly alleged violations of federal criminal statutes. I would submit they're plainly unlawful acts and are individual capacity by definition on that ground. One more point here is counsels seems to be highlighting this, this language from, from Maxwell and Pastore that says, you know, the courts need to be sensitive to the impacts of these individual suits on, on the sovereign. And, and the, that, the language is there, but it's, it's, it's not a license to freely weigh all of these other considerations and, and, and the nature of the act and the office and, and all of these other things. Those are done properly under personal immunity analysis, but we also have additional guidance from the Ninth Circuit. And in Pastore, it quotes that language and it says, yeah, Maxwell says that. And let's look at cases where we were sensitive to that. And it, and it cites and discusses this circuit's decision in Cook. And in Cook, it was a, some sort of dram shop action, vicarious liability. And the plaintiff there was suing the individual employee, but sought recovery against the tribe. And it said, yeah, that, that was a case where the individual was named, but the relief sought was in fact against the sovereign. And then, and then Pastore sites this court's decision in Hardin. And Hardin was an action by, against a tribe and, and tribal council members for ejectment from, from land. And if you look at the Hardin decision, the bulk of the discussion is on the tribe's civil jurisdiction over non-members under the Supreme Court's decision in Montana. And, and it, and it holds there that yes, the tribe did have authority, jurisdiction to exclude this particular individual from reservation lands. And then it goes and, and, and turns to the status of the individual in five sentences. It says, look, the tribe had jurisdiction to do this, and so the council members were acting within their official capacity, and you can't bring, they're, they're immune from suit. But I, that, and that Hardin case relied on USV Oregon. And, and I think those cases, as we, as we've discussed in our brief, have, have been marginalized, marginalized, and do not bear on the very clear real party and interest test that, that has been laid down recently by the Supreme Court and the circuit. Council also had a discussion about, you know, the, the fraud being 5 percent of the total amount invested and, you know, attacking the, it, it, it seemed like the, the, the plaza, and discussing personal uses. And, you know, we've discussed that, that money were diverted to unspecified personal uses. I would like to remind the panel that those in the, those arguments in the first instance go to plausibility and, and, and Rule 9. And so, those... Don't look at that. Yeah. And, and so those issues aren't, aren't properly before the court. And finally, on, on the petition, the request for reformation doesn't, doesn't bear on the analysis. The that is a basis, one basis on which we are seeking discovery in the district court is that we would like to reform the contract. But again, it's uncertain whether, whether that relief will ultimately be, be available. And so, and in, in any event that the case law is clear, that's a contract remedy. It doesn't bear on the real party and interest to the fraud and RICO claims. Unless the panel has anything else, I'll yield the rest of my time. I have no questions. All right. Thank you very much, Council. Your Honor, there's two points. Judge Wynn, you asked whether, if we concede that the individual defendants would be bound by an adverse judgment, aren't we conceding essentially the entire case? The answer is no. Because the test is not that simple. The district court held that if, since the individual defendants would be bound by an adverse judgment on the real parties and interest. The Supreme Court has said in several other cases, which we've cited in the briefs and I've mentioned here today, that that's simply not the entire analysis. You look to the essence or the essential nature of the case based on the claims for relief and the whole record, the entire record, not simply one individual claim excised from the rest of the case. If courts were only required to look at who would be bound by an adverse judgment, then the real party and interest test would be rendered hollow. And it would allow plaintiffs, such as the plaintiff here, to dictate the nature of the suit simply by naming a defendant individually and claiming entitlement to damages. And that could not have been the intent of the Supreme Court in Lewis. And the facts of Lewis are so different from the facts here that it's our suggestion that Lewis was an attempt to balance the rights of a tort plaintiff, a tort victim, with protecting tribal sovereign immunity. Because that was a car accident case where the plaintiffs would have been left without a remedy. They allowed that claim to proceed despite the assertion of sovereign immunity by the employee. Here, plaintiffs have a remedy, the remedy on their breach of contract claim. And as plaintiffs' counsel just conceded, if they're successful on the breach of contract claim and the tort claim, they would be barred by double recovery, the rule against double recovery, if they were successful on both. We submit that it would be an extremely broad expansion of the doctrine of sovereign immunity in order to allow the plaintiffs' claims to proceed here where they do have that remedy and they concede that they would be limited by the rule against double recovery. I see I am almost out of time. You're actually over time. We thank you for your argument. Thank you very much. I'd like the other side as well.
judges: O'scannlain, Siler, Nguyen